AXIS REINSURANCE COMPANY, et al., Defendant Below, Appellants,
v.
HLTH CORPORATION and EMDEON PRACTICE SERVICES, INC., Plaintiff Below, Appellees.
HLTH CORPORATION and EMDEON PRACTICE SERVICES, INC., Plaintiffs Below, Appellants,
v.
AXIS REINSURANCE COMPANY, et al., Defendants Below, Appellees.
Nos. 565, 2009, 569, 2009, Consolidated
Supreme Court of Delaware.
Submitted: February 24, 2010.
Decided: April 22, 2010.
Corrected: May 10, 2010.
David J. Baldwin and Jennifer C. Wasson of Potter Anderson & Corroon LLP, Wilmington, Delaware; Of Counsel: William G. Passannante (argued) and Alexander D. Hardiman of Anderson Kill & Olick, P.C., New York, New York for plaintiffs HLTH Corporation and Emdeon Practice Services, Inc.
William L. Doerler of White and Williams LLP, Wilmington, Delaware; Of Counsel: Lawrence J. Bistany (argued) of White and Williams LLP, Philadelphia, Pennsylvania for defendant National Union Fire Insurance Company of Pittsburgh, PA.
Robert J. Katzenstein of Smith, Katzenstein & Furlow LLP, Wilmington, Delaware; Of Counsel: Joan M. Gilbride (argued) and Robert A. Benjamin of Kaufman Borgeest & Ryan LLP, New York, NY for defendant RSUI Indemnity Company.
Robert J. Katzenstein of Smith, Katzenstein& Furlow LLP, Wilmington, Delaware; Of Counsel: William E. Smith and Parker J. Lavin of Wiley Rein LLP, Washington, DC for defendant Axis Reinsurance Company.
Neal J. Levitsky and Seth A. Niederman of Fox Rothschild LLP, Wilmington, Delaware; Of Counsel: Michael Goodstein (argued) and Matthew J. Burkhart of Bailey Cavalieri LLC, Columbus, Ohio for defendant Old Republic Insurance Company.
J. R. Julian of J. R. Julian, P.A., Wilmington, Delaware; Of Counsel: Barry T. Bassis (argued) of Tressler LLP, New York, New York for Fireman's Fund Insurance Company.
Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.
STEELE, Chief Justice:
In this consolidated action,[1] National Union Fire Insurance Company[2] and HLTH appeal from two separate denials of summary judgment arising out of disputed insurance policy language affecting HLTH's right to coverage. HLTH contends that the judge erroneously concluded that HLTH's failure to give simultaneous notice to two separate towers of insurance triggered a Prior Notice Exclusion that barred HLTH's claim for coverage. National Union contends that the judge improperly found that an Amend Retention endorsement implied that the insurer knew of HLTH's claims and prevented National Union from invoking its Prior Acts Exclusion. We find that both exclusions definitively bar HLTH's demand for coverage. Accordingly, we AFFIRM in part and REVERSE in part.

Factual and Procedural Background 
A federal grand jury indicted several former directors and officers of Medical Manager Corporation on December 15, 2005 for participating in a scheme to "defraud holders of Medical Manager and WebMD securities, members of the investing public and others" by deliberately inflating the company's earnings and laundering money between 1997 and 2003.[3] During the period of the alleged fraud, Medical Manager Corporation was twice acquired and was renamed HLTH Corporation.
HLTH sought coverage for defense costs incurred on behalf of its directors and officers in the criminal case under three separate claims-made D&O insurance programs: Program IMedical Manager Tower (Policy period of January 30, 1999 to July 23, 2005); Program IISynetic Tower (Policy period of December 14, 1999 to December 14, 2000, with an extended reporting period expiring on September 12, 2006); and Program IIIEmdeon Tower (Policy period of September 13, 2005 to September 13, 2006).
All of the insurers in Programs I and II either settled or advanced their policy limits leaving HLTH's recourse to seek coverage only under Program III. Program III was an insurance tower consisting of a primary policy issued by National Union and several excess policies issued by Federal Insurance Company, Fireman's Fund Insurance Company, RSUI Indemnity Company, Old Republic Insurance Company, and Axis Reinsurance Company. Five of the six Program III insurers denied coverage asserting that their Prior Notice exclusions precluded coverage because HLTH notified the Program I insurers of its claims on July 21, 2005 but did not notify the Program III insurers until December 22, 2005. The Program III insurers also denied coverage because the Prior Acts exclusions in their policies barred coverage for any claims arising before February 1999.
In response to the denials, HLTH contended that the only way the insurers could exclude coverage based on the Prior Notice exclusions was if Emdeonthe contracting insuredgave prior notice to another Emdeon Tower insurer. Here, HLTH gave prior notice to a MMC Tower insurernot another Emdeon Tower insurer. HLTH further contends that the Prior Notice Exclusion only applied to renewals, replacements, or successors of the Program I policies, and that the Program III policies did not fall into any of the three categories. Finally, HLTH alleged that the Program III insurers knew about the Singer Action[4] when they issued the policies and specifically agreed to provide coverage for Singer claims;[5] therefore, the insurers were equitably estopped from relying on the Prior Acts exclusions.
On August 31, 2009, a Superior Court judge denied National Union's Motion for summary judgment and granted HLTH's Cross-Motion for partial summary judgment, concluding that National Union failed to "demonstrate that the Prior Acts Exclusion clearly and unambiguously control[led] conflicting language" in the Policy.[6] In reaching that conclusion, the judge noted that (i) National Union specifically amended its policy to include coverage for claims arising out of the Singer Action[7] and (ii) National Union knew that the Singer Action centered largely on conduct occurring between 1997 and 1999, when it sold HLTH the Policy with an Amend Retention endorsement. The judge determined that National Union and HLTH "did not intend the Prior Acts Exclusion to be a complete bar to claims arising from the [Singer Action]."[8]
The judge also granted the excess insurance carriers' motion for summary judgment after finding that the Prior Notice exclusions in their policies expressly barred HLTH's demand for coverage because HLTH notified the MMC Tower insurers before it notified the Emdeon Tower excess carriers.[9] This appeal and cross-appeal followed.

Claims on Appeal 
The parties' coverage dispute turns on (i) whether the National Union Prior Acts Exclusion unambiguously precludes coverage for any claims associated with the Singer Action or conflicts with the language of the Amend Retention endorsement, so as to uniquely create coverage for those claims and (ii) whether the Prior Notice Exclusion definitively bars coverage of the claims arising out of the Singer Action because HLTH notified the MMC Tower insurers several months before it notified the Emdeon Tower insurers.

Standard of Review 
We review de novo a Superior Court judge's grant or denial of summary judgment.[10]

Discussion

I. Prior Acts Exclusion Claim
National Union's Prior Acts Exclusion bars coverage for "[l]oss[es] in connection with any Claim made against an Insured alleging any Wrongful Act which provides coverage for Wrongful Acts occurring on or after and otherwise covered by this policy." Additionally, National Union modified its policy to include an "Amend Retention" endorsement, which provided that "for each claim, the Insurer shall only be liable for the amount of the Loss arising from a Claim which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b), and 4(c) of the Declarations, such Retention amounts to be borne by an Organization . . . and remain uninsured:

 4 (a) Securities Claims (other than Securities Claims
 that contain a Medical Manager Claim): $5,000,000

 4 (c) Securities Claims that Contain a Medical Manager
 Claim: $10,000,000

National Union contends that the Amend Retention endorsement, read together with the Prior Acts Exclusion, does not create an ambiguity, because the Amend Retention endorsement only affects retentions for otherwise covered claims and does not, and was not intended, to create coverage. HLTH responds that the Prior Acts Exclusion is ambiguous because it conflicts with the Amend Retention endorsement, which creates and defines a specific category of coverage for claims arising from the Singer Action. HLTH asserts that an ambiguous exclusion should be construed strictly against the drafter and to bestow on the insured the most beneficial interpretation.[11]
HLTH further contends that the Amend Retention endorsement trumps the Prior Acts Exclusion, because specific terms of a contract supersede more general terms.[12] Finally, HLTH contends that even if the Prior Acts Exclusion applies, the doctrines of equitable estoppel and waiver preclude the insurer from invoking it in these circumstances. The Superior Court motion judge found HLTH's arguments more convincing, and concluded that National Union had failed to "demonstrate that the Prior Acts Exclusion clearly and unambiguously control[led] conflicting language" in the endorsement.[13]
We disagree. We find National Union's contentions more persuasive. An insurance contract is not ambiguous simply because the parties do not agree on its proper construction.[14] Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different reasonable interpretations.[15] Reading the Prior Acts Exclusion in tandem with the Amend Retention endorsement does not create an ambiguity, because each has a distinct and independent purpose and function.
The Prior Acts Exclusion relates to coverage and excludes coverage for any claims occurring before a prescribed date. Unlike the Prior Acts Exclusion, the Amend Retention endorsement does not relate to events that trigger or preclude coverage. Rather, the Amend Retention endorsement merely increases the amount of the retention for any covered claim specific to the Singer Action[16] and delineates the retentions applicable to other claims for which coverage may exist.[17]
The Amend Retention endorsement may well reflect the contracting parties' knowledge of inevitable Singer claims arising out of the government's ongoing investigation. But, the parties' knowledge of potential claims does not create a conflict with (or otherwise control) the clear policy language. If the general coverage provisions in National Union's policy provided coverage for the imminent Singer claims and none of National Union's exclusions barred that coverage, then the Amend Retention endorsement only serves to specify a certain retention amount to be paid by HLTH before triggering National Union's coverage.
Under the National Union policy, HLTH agreed to expend $10 million for securities costs associated with Medical Manager Claims, if covered, before HLTH could look to National Union and other Emdeon Tower insurers to respond to the loss. The introductory language of the Amend Retention endorsement does not create an ambiguity which changes that result. The Amend Retention endorsement states that notwithstanding its terms "all other terms, conditions, and exclusions remain the same," and that the Amend Retention endorsement applies "notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence)." Although the Amend Retention endorsement's introductory language might be read broadly to trump or supersede the Prior Acts Exclusion, that reading would require us to interpret that language to supersede all other endorsements in the policy, including endorsements having nothing to do with retention amounts. That would lead to an absurd result that would render many provisions of the policy a nullity.
A more reasonable and harmonious interpretation results from reading the Amend Retention endorsement language more narrowly to supersede only those other endorsements that deal with retentions.[18] Indeed, the narrower reading, besides being more sensible, is the only proper interpretation, as a matter of law. Here, the controlling rule of construction is that where a contract provision lends itself to two interpretations, a court will not adopt the interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions.[19] Finally, HLTH's waiver and equitable estoppel arguments are inconsistent with the general principle that the doctrine may "not . . . be invoked to bring within the coverage of an insurance policy risks, property or losses not covered by [the policy's] terms or expressly excluded therefrom."[20] Accordingly, we determine that the motion judge erroneously concluded that the Prior Acts Exclusion did not bar HLTH's claim for coverage.

II. Prior Notice Exclusion Claim
National Union's Prior Notice Exclusion precludes coverage for "[l]oss[es] in connection with any Claim made against an Insured alleging, arising out of, based upon or attributable to the facts alleged, or the same or related Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time."
HLTH claims that the Superior Court judge erred by determining that the Prior Notice Exclusion was unambiguous and that HLTH forfeited its coverage claim under the Emdeon Tower (Program III) because HLTH first notified the MMC Tower insurer (Program I). HLTH asserts that a fair interpretation of the prior notice provision when read in light of the entire policy, is that: (i) the MMC and Emdeon Towers provided concurrent, overlapping insurance coverage; (ii) the exclusion bars coverage only where the insured entity gives notice under earlier Emdeon Tower policies; and (iii) the "renewal, replacement, or successor" language can only describe policies issued to one entity and MMC and HLTH are two separate and distinct entities.
In support of its first argument HLTH, relying on Alstrin v. St. Paul Mercury Ins. Co.,[21] contends that the motion judge erroneously concluded that the Emdeon Tower succeeded in time to the MMC Tower, because the Emdeon Tower and the MMC Tower provided concurrent, overlapping coverage. Section IV (c) of the MMC Tower policy extended coverage beyond the expiration of that policy for potential wrongful acts reported by HLTH during the policy period. On, July 21, 2005, HLTH wrote a "notice of circumstances" letter notifying the MMC Tower insurers of the potential Singer Action two days before the MMC Tower insurers' policies expired. HLTH contends that the notice triggered coverage under the MMC Tower policies and coincided with the Emdeon Tower policy period. Because there was concurrent, overlapping coverage, HLTH asserts, the notice given to the MMC Tower insurers did not trigger the Prior Notice Exclusion.
We disagree and conclude that the motion judge correctly distinguished Alstrin and held that the Emdeon Tower did not provide concurrent coverage with the MMC Tower. Although the Alstrin court determined that the insurance carriers in that case provided concurrent overlapping coverage, the court did not rest its conclusion solely on the extended reporting period.[22] That court also found that the coverage dates of the policies overlapped for several months after the initial policies incepted and before those policies expired.[23]
The Alstrin policies provided coverage from July 31, 1996 through July 31, 1997 and from February 12, 1997 through February 12, 1998, respectively.[24] The two separate policies overlapped for approximately five months. The exact opposite occurred here in HLTH's case. The MMC Tower policies covered the period January 30, 1999 to July 23, 2005 and the Emdeon Tower policies provided coverage from September 13, 2005 to September 13, 2006. There is a five-month break between the two policies. That precludes any finding that the two Towers provided concurrent, overlapping coverage.
HLTH next contends that the motion judge's interpretation of the Primary Prior Notice Exclusion unreasonably and unnecessarily broadens the Primary Prior Notice Exclusion by precluding coverage where notice has been given previously by any entity under any of the earlier insurance policies. HLTH urges that the Prior Notice Exclusion should apply only where HLTH first notifies an insurer in one Tower, then notifies another insurer in the same Tower later, and then seeks coverage under both insurers' policies. HLTH concludes that only where an insured fails to simultaneously notify insurers that are part of the same insurance tower, can the latter insurer deny coverage under the Prior Notice Exclusion.
HLTH's contention fails to consider the express, broad language of the Prior Notice Exclusion. Delaware law requires "an insurance contract [to] be read to accord with the reasonable expectations of the purchaser so far as the language will permit."[25] Furthermore, the policy language must be given its plain meaning.[26] The exclusion plainly and expressly prohibits coverage for acts alleged and claims reported under any policy "of which [the National Union] policy is a renewal or replacement or which it may succeed in time." That language does not bar (as HLTH would like us to conclude) coverage for acts alleged and claims reported under any policy in the same Tower as National Union and "of which [the National Union] policy is a renewal or replacement or which it may succeed in time."
Moreover, the provision does not explicitly require only the insured to notify the insurer of potential claims. On the contrary, the provision allows any entity to do so. The provision precludes coverage for losses related to any claim made against an Insurednot for losses related to any claim made by the Insured.
HLTH also argues that National Union's Prior Notice Exclusion is inapplicable because the provision logically refers to renewals or replacements of Emdeon policies and, therefore, cannot refer to policies issued to separate and distinct entities. HLTH relies on the doctrine of ejusdem generis, which stands for the proposition that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed."[27] HLTH contends that the broad phrase, "succeed-in-time," must be read in conjunction with the narrower terms, renewal or replacement and suggests that because Emdeon policies cannot logically "replace" or "renew" MMC policies, Emdeon policies cannot logically "succeed" MMC policies.
Although HLTH's "if A, then B" argument has a surface appeal, the argument mistakenly presupposes that succeed-in-time is the broad term and renewal or replacement are the specific terms in the ejusdem generis formula. To the contrary, "renewals," "replacements," and "successors" are all specific terms that describe the more general phrase"any policy." The Prior Notice Exclusion expressly narrows the policies to which the phrase, any policy, might otherwise apply and does not cover other types of policies such as policies with concurrent coverage dates or policies that incepted after the Emdeon Tower policies.
Furthermore, HLTH's interpretation does not fit the express terms of the policy. The Prior Notice Exclusion expressly precludes coverage for losses related to acts alleged or claims reported under any policy "of which this policy is a renewal or replacement or which it may succeed in time." The provision does not preclude coverage for losses related to acts alleged or claims reported under any policy in the same Tower or Program as National Union and "of which [the National Union] policy is a renewal or replacement or which it may succeed in time."
Because the Prior Notice Exclusion uses unqualified, broad phrases that unambiguously permit prior notice to be given by any entity with respect to any policy and because HLTH failed to give simultaneous notification to each insurance tower, the motion judge correctly held that the exclusion bars all coverage for claims against insurers under the Emdeon Tower.[28]

Conclusion
For the foregoing reasons, we AFFIRM the Superior Court's judgment denying HLTH's motion and dismissing its coverage claims based upon the Prior Notice Exclusion; REVERSE its denial of National Union's motion for summary judgment based on the Prior Acts Exclusion; and REMAND with instructions to enter summary judgment in favor of National Union.
NOTES
[1] HLTH Corp. v. Clarendon Nat'l Ins. Co., 2009 WL 2849779 & 2009 WL 2849777 (Del. Super. Aug. 31, 2009).
[2] National Union Fire Insurance Company, joined by Fireman's Fund Insurance Company, RSUI Indemnity Company, Old Republic Insurance Company, and Axis Reinsurance Company, appeal.
[3] Pending matter, styled United States v. Singer, Crim. No. 9:05-928 (D.S.C.).
[4] Id.
[5] Id.
[6] HLTH Corp. v. Clarendon Nat. Ins. Co., 2009 WL 2849777, at *27.
[7] Singer, Crim. No. 9:05-928 (D.S.C.).
[8] HLTH Corp. v. Clarendon Nat. Ins. Co., 2009 WL 2849777, at *27.
[9] See HLTH Corp. v. Clarendon Nat. Ins. Co., 2009 WL 2849779 (Del. Super. Aug. 31, 2009), HLTH Corp. v. Agricultural Excess & Surplus Ins. Co., 2008 WL 3413327 (Del. Super. July 31, 2008), and HLTH Corp. v. Clarendon Nat. Ins. Co., 2009 WL 2215126 (Del. Super. July 15, 2009).
[10] Rizzitiello v. McDonald's Corp., 868 A.2d 825, 829 (Del. 2005); Lank v. Moyed, 909 A.2d 106, 108 (Del. 2006).
[11] Sun-Times Media Group, Inc. v. Royal Sunalliance Ins. Co. of Canada, 2007 WL 1811265, at *11 (Del. Super. June 20, 2007).
[12] 17A C.J.S. Contracts § 328 (June 2009); DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954, 961 (Del. 2005).
[13] HLTH Corp. v. Clarendon Nat. Ins. Co., 2009 WL 2849777, at *27.
[14] Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992).
[15] O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 288 (Del. 2001).
[16] Singer, Crim. No. 9:05-928 (D.S.C.).
[17] See BLACK'S LAW DICTIONARY (8th ed. 2004) (Retention provisions generally define the amount of expenses associated with a potentially covered claim the insured must pay before the insurer steps in and responds to the loss).
[18] Endorsement 13, entitled "Amend Retention," states:

1. Item 4. of the Declarations, entitled RETENTION is deleted in its entirety and replaced with the following [RETENTION].
[19] See, RESTATEMENT (SECOND) OF CONTRACTS § 203 (1981); Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728 (Del. 2006); O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 288 (Del. 2001); and Holland v. Nat'l Automotive Fibres, 194 A. 124, 127 (Del. Ch. 1937).
[20] National Fire Ins. Co. of Harford v. Eastern Shore Lab., Inc., 301 A.2d 526, 530 (Del. Super. 1973).
[21] 179 F. Supp. 2d 376 (D. Del. 2002).
[22] Id. at 402, 403.
[23] Id.
[24] Id.
[25] Steigler v. Ins. Co. of N. Am., 384 A.2d 398, 401 (Del. 1978).
[26] Westfield Ins. Group v. J.P.'s Wharf, Ltd., 859 A.2d 74, 76 (Del. 2004).
[27] BLACK'S LAW DICTIONARY (8th ed. 2004); Donaghy v. State, 100 A. 696, 707 (Del. 1917).
[28] The Primary Prior Notice Exclusion analysis also applies to the excess carriers' Prior Notice exclusions because of the similar language of the provisions that bar coverage for a claim that:

1. "prior to the inception date of this policy, has been the subject of notice to any insurer (RSUI);
2. "has been the subject of a written notice under any other policy which incepted prior to the inception of the Policy Period under this Policy;" (Old Republic) and
3. "has been the subject of any written notice given under any other policy of insurance" (Axis).