**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ISAAC LARIAN, as Trustee of The Larian Living Trust, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.: N22C-07-133 EMD CCLD |
| MOMENTUS INC., | ) ) | |
| Defendant. | ) ) | |

Submitted: November 8, 2023
Decided: January 31, 2024

*Upon Defendant's Motion for Partial Summary Judgment*
**DENIED**

Dominick T. Gattuso, Esquire, Elizabeth A. DeFelice, Esquire, Gillian L. Andrews, Esquire, Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, Jonathan K. Cooperman, Esquire, Kelly Drye & Warren LLP, New York, New York. *Attorneys for Plaintiff Isaac Larian, as Trustee for The Larian Living Trust.*

Joseph L. Christensen, Esquire, Christensen & Dougherty LLP, Wilmington, Delaware, Perrie M. Weiner, Esquire, Baker & McKenzie LLP, Los Angeles, California, Peter P. Tomczak, Esquire, Michael D. Lehrman, Esquire, Baker & McKenzie LLP, Chicago, Illinois. *Attorneys for Defendant Momentus, Inc.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a breach of contract and fraudulent inducement action assigned to the Complex Commercial Litigation Division of the Court.  In February and August 2020, respectively, The Larian Living Trust (the "Trust") through Plaintiff Isaac Larian, the Trust's trustee ("Plaintiff"), entered into two "Simple Agreements for Future Equity" ("SAFE") with Defendant Momentus

Inc. ("Momentus," and, together with Larian, the "Parties").[1]  Essentially, these SAFE

agreements were investment contracts.[2]  The Trust ultimately invested $4 million in Momentus.[3]

Plaintiff now asserts that the Trust was entitled to shares of Momentus stock, and that

Momentus failed to timely issue those shares to the Trust.[4]  Plaintiff also maintains that the Trust

was fraudulently induced into investing in Momentus.[5]  Accordingly, the Trust and Isaac Larian

brought this action and alleged two causes of action against Momentus: (1) breach of contract

with respect to both SAFE agreements; and (2) fraudulent inducement for allegedly making

material misrepresentations about Momentus and its technology, and omissions about its then-

CEO, Mikhail Kokorich.[6]

The Trust and Plaintiff filed the original Complaint on July 20, 2022.[7]  Momentus filed

its first motion to dismiss in September 2022.[8]  Instead of responding to the motion to dismiss,

the Trust and Plaintiff filed an Amended Complaint on November 16, 2022.[9]  The Amended

Complaint had the effect of mooting Momentus' first motion to dismiss.

On December 2, 2022, Momentus filed a second motion to dismiss (the "Motion to

Dismiss").  In the Motion to Dismiss, Momentus moved to dismiss Plaintiff's claims.[10]

Momentus also argued that the Trust lacked standing to bring the suit.[11]  The Trust and Isaac

Larian opposed the Motion to Dismiss.[12]  The Court entertained oral argument on March 16,

---

[1] Amended Complaint (hereinafter "Am. Compl.") ¶ 12, Nov. 16, 2022 (D.I. No. 19).
[2] *Id.* ¶ 1.
[3] *Id.* ¶ 65.
[4] *Id.* ¶ 60.
[5] *Id.* ¶ 64.
[6] *See Id.* ¶¶ 58-66.
[7] *See* D.I. No. 1.
[8] *See* D.I. No. 14.
[9] *See* Am. Compl.
[10] *See* Mem. of Law in Supp. of Def. Momentus Inc's Mot. to Dismiss the Larian Living Trust and Isaac Larian, Trustee's Am. Compl. (hereinafter "MTD") (D.I. No. 20).
[11] *See id*.
[12] *See* Pls. the Larian Living Trust's and Isaac Larian, Trustee's Answering Br. in Opp'n to Momentus's Mot. to Dismiss (hereinafter "Opp'n to MTD"), (D.I. No. 25).

2023. At the conclusion of the hearing, the Court denied the Motion to Dismiss except as to standing which the Court granted.[13] Accordingly, Plaintiff (as trustee of the Trust) substituted himself for the Trustee as the named plaintiff.[14]

Presently before the Court is Defendant's Motion for Partial Summary Judgment (the "SJ Motion"). Through the SJ Motion, Momentus seeks judgment on the Amended Complaint's breach of contract claim. Plaintiff opposed the SJ Motion.[15] The Court held a hearing on the SJ Motion on November 8, 2023. At the conclusion of the hearing the Court took the SJ Motion under advisement.

For the reasons stated below, the SJ Motion is **DENIED**.

## II.     RELEVANT FACTS

### A. THE PARTIES

Mr. Larian, as Trustee of the Trust, resides in California.[16] The Trust is a California trust with its beneficiaries located in California.[17] Non-party Jason Larian is the son of Isaac Larian and a Beneficiary of the Trust.[18] Jason Larian resides in California.[19]

Momentus is incorporated in Delaware and has its principal place of business in California.[20] Momentus marketed itself as a "space infrastructure company" that produced a "disruptive water-based propulsion technology" to enable commercial satellites to be placed into

---

[13] *See* Mot. to Dismiss Hearing Transcript of March 16, 2023 (filed March 22, 2023) (hereinafter "Tr.") (D.I. No. 36).
[14] Tr. at 69. For consistency with older filings, this memo will primarily refer to Plaintiff "the Trust."
[15] Plaintiff Isaac Larian, as Trustee of The Larian Living Trust's Answering Br. in Opp'n to Momentus, Inc.'s Mot. for Partial Summ. J. (hereinafter "Opp'n to MSJ) (D.I. No. 46.
[16] Am. Compl.¶ 9.
[17] *Id.* ¶ 8.
[18] See Opp'n to MSJ at 5.
[19] *Id.*
[20] Am. Compl. ¶ 9.

specific orbits around Earth.[21]  Momentus' former CEO is non-party Mikhail Kokorich, a Russian national with experience in the industry.[22]

## B.  THE SAFE AGREEMENTS

The Trust invested $4 million in Momentus through two SAFE agreements.[23]  On February 24, 2020, the Trust, through trustee Isaac Larian, and Momentus entered into the first SAFE agreement (the "February SAFE").[24]  The Trust invested $1 million in exchange for "the right to certain shares of [Momentus'] capital stock" in the event of an "Equity Financing" or "Liquidity Event."[25]  On August 6, 2020, the Trust, through Plaintiff, as trustee, and Momentus entered into the second SAFE agreement (the "August SAFE").[26]  Under the August SAFE, the Trust invested $3 million in Momentus.[27]  Both Parties agree that the terms of the February SAFE and the August SAFE are materially the same.[28]  Both SAFE agreements are governed by Delaware law.[29]

Section 1(a) of the SAFE agreements, titled "Equity Financing," states:

If there is an Equity Financing before the expiration or termination of this Safe, [Momentus] will automatically issue to the [Trust] a number of shares of Safe Preferred Stock equal to the Purchase Amount divided by the Conversion Price on the on the initial closing of the Equity Financing.  In connection with the issuance of Safe Preferred Stock by [Momentus] to the [Trust] pursuant to this Section 1(a): (i) The [Trust] will execute and deliver to [Momentus] all transaction documents related to the Equity Financing, *provided*, that such documents are the same documents to be entered into with the purchasers of Standard Preferred Stock, with appropriate variations for the Safe Preferred Stock if applicable, and *provided further*, that such documents have customary exceptions to any drag-along applicable to the [Trust], including, without limitation, limited representations and

---

[21] *See Id.* ¶¶ 2, 11.
[22] *See Id.* ¶ 42.
[23] *See Id.* ¶¶ 12, 17.
[24] *See Id.* ¶ 12.
[25] Am. Compl., February SAFE § 1 (Ex. B to D.I. No. 19).
[26] Am. Compl. ¶ 17.
[27] Am. Compl.  (the August SAFE is Ex. C to D.I. No. 19).
[28] *See* Am. Compl. ¶ 17; MTD at 8.
[29] Am. Compl., February SAFE § 5(f), August SAFE § 5(f).

4

warranties and limited liability and indemnification obligations on part of the [Trust].[30]

The SAFE agreements define "Equity Financing" as "a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which [Momentus] issues and sells Preferred Stock at a fixed pre-money valuation."[31] "Standard Preferred Stock" is "the shares of a series of Preferred Stock issued to the investors investing new money in [Momentus] in connection with the initial closing of the Equity Financing."[32] "Safe Preferred Stock" is essentially the same as Standard Preferred Stock, but Safe Preferred Stock has (i) liquidation preference with anti-dilution protection; and (ii) different dividend rights.[33]

Section 1(b) of the SAFE agreements, titled "Liquidity Event," states in pertinent part:

> If there is a Liquidity Event before the termination of this Safe, this Safe will automatically be entitled to receive a portion of the Proceeds, due and payable to the [Trust] immediately prior to, or concurrent with, the consummation of such Liquidity Event, equal to the greater of (i) the Purchase Amount (the "**Cash-Out Amount**") or (ii) the amount payable on the number of shares of Common Stock equal to the Purchase Amount divided by the Liquidity Price (the "**Conversion Amount**"). If any of [Momentus]'s securityholders are given a choice as to the form and amount of Proceeds to be received in a Liquidity Event, the [Trust] will be given the same choice, *provided* that the [Trust] may not choose to receive a form of consideration that the [Trust] would be ineligible to receive as a result of the [Trust]'s failure to satisfy any requirement or limitation generally applicable to [Momentus]'s securityholders, or under any applicable laws.[34]

The SAFE agreements define a "Liquidity Event" as a "Change of Control or an Initial Public Offering."[35] "Proceeds" are "cash and other assets (including without limitation stock

---

[30] *Id.* § 1(a) (emphasis in original).
[31] *Id.* § 2.
[32] *Id.*
[33] *Id.*
[34] August SAFE § 1(a) (emphasis in original).
[35] February SAFE § 2.

consideration) that are proceeds from the Liquidity Event or the Dissolution Event, as applicable, and legally available for distribution."[36]

## C. THE MERGER AGREEMENT[37]

On October 7, 2020, Momentus announced that it agreed to a merger with Stable Roads Acquisition Corp. ("Stable Roads"), which is a special purpose acquisition vehicle or "SPAC."[38] The merger was "completed in or around August 2021" pursuant to a Merger Agreement (the "Merger Agreement").[39] The merger's purpose was to take Momentus public.[40]

Regarding the SAFE Agreements, Merger Agreement section 2.6(f) states:

Immediately prior to the Effective Time, each outstanding Company SAFE shall be automatically converted into the right to receive the aggregate Per Share Company Stock Consideration payable in accordance with the terms of such applicable Company SAFE in connection with the Transactions (for the avoidance of doubt, with respect to each Company SAFE, such aggregate Per Share Company Stock Consideration shall be equal to (i) the number of shares of Company Stock equal to the (A) Purchase Amount (as defined in each such Company SAFE), *divided by* (B) Liquidity Price (as defined in each such Company SAFE) applicable to such Company SAFE, *multiplied by* (ii) the Per Share Company Stock Consideration). Each Company SAFE so converted shall immediately thereafter terminate in accordance with its terms.[41]

The Merger Agreement defines the "Effective Time" as the date the "first Certificate of Merger with the Secretary of State of the State of Delaware" is filed, or a "later time as may be agreed in writing" by the parties to the Merger.[42] The First Certificate of Merger was filed on August 12, 2021 and neither Party claims another date was specified.[43]

---

[36] Am. Compl. Additionally, the SAFE agreements define "Liquidity Price" as "the price per share equal to the Valuation Cap divided by the Liquidity Capitalization." *See* February SAFE § 2; August SAFE § 2.

[37] Ex. D to D.I. No. 20, and Ex. D to D.I. No. 42 (hereinafter "Merger Agreement").

[38] Am. Compl. ¶ 47.

[39] *Id.* ¶ 51.

[40] *See id.* ¶ 47.

[41] Merger Agreement § 2.6(f) (italics in original).

[42] *Id.* § 2.1.

[43] Opp'n to MSJ at 9-10; *see generally* Mem. of Law in Supp. of Def. Momentus Inc.'s Mot. for Partial Summ. J. (hereinafter "MSJ") at 8 (D.I. No. 42) (dating the merger consummation to August 12, 2021).

The Merger Agreement further provides:

> Each share of Company Stock . . . issued and outstanding immediately prior to the Effective Time will be cancelled and automatically deemed for all purposes to represent the right to receive, and the holder of such share of Company Stock shall be entitled to receive, the Per Share Company Stock Consideration pursuant to this Section 2.6(a), issuable in Parent Class A Common Stock, in each case, without interest, upon surrender of stock certificates representing all of such Company Stockholder's Company Stock (each, a "Certificate") and delivery of the other documents requires pursuant to Section 2.8.[44]

Merger Agreement section 2.8, titled "Disbursement of Aggregate Stock Consideration,"

then specifies:

> Promptly after the Effective Time (and in any event within five (5) Business Days thereafter), the Exchange Agent shall mail to each holder of Company Interests (other than holders of Excluded Shares and holders of Company Options, Company Warrants and Company Restricted Stock): (i) a letter of transmittal (the "Letter of Transmittal") in such form and having such other provisions as Parent and the Company may reasonably agree; and (ii) instructions for surrendering Certificates representing Company Stock (or affidavits of loss in lieu of the Certificates as provided in Section 2.8(g)), if applicable, to the Exchange Agent (the "Surrender Documentation") . . . . Upon receipt by the Exchange Agent of the completed Letter of Transmittal and the Surrender Documentation, the Exchange Agent will deliver to the holder of such Company Interests the portion of the Aggregate Stock Consideration payable to such holder in respect of the Company Interests held by such holder in accordance with the terms of Section 2.6 . . . .[45]

## D. THE LETTER OF TRANSMITTAL AND POST-MERGER COMMUNICATIONS[46]

Following the Merger's consummation, Momentus' in-house counsel sent an email to the

Trust's counsel on September 15, 2021 stating the Trust "should receive about 724,995 shares"

of Momentus stock.[47]  The email also specified, "Attached, please find the Letter of Transmittal

---

[44] Merger Agreement § 2.6(a).
[45] *Id*. § 2.8(d).
[46] *See* "First Email Chain" (Ex. F to D.I. No. 42), containing messages from Sept. 9, 2021 through Sept. 27, 2021; "Second Email Chain" (Ex. G to D.I. No. 42), containing messages from Sept. 29, 2021 through April 6, 2022; and "Third Email Chain" (Ex. H to D.I. No. 42), containing a message from April 8, 2022.
[47] Am. Compl. ¶ 52, Ex. D.

and a link to the IRS Form you will need to use for exchanging your shares and/or SAFEs of

Momentus, Inc. for the merger consideration."[48]  The Letter of Transmittal stated in part:

> In order to effect the exchange and receive the Per Share Company Stock
> Consideration, the [Trust] must correctly complete and sign this Letter of
> Transmittal and submit either (a) the executed Letter of Transmittal to the address
> above or (b) an electronic copy of the executed Letter of Transmittal to the secure
> URL address provided in the Accompanying Instructions hereto.[49]

Within an hour, Jason Larian emailed principals at Momentus and responded that "[w]e have a

few questions regarding the two SAFE notes we have with you and what the contemplated

conversion is to shares."[50]

The Parties differ fundamentally in their characterization of the series of communications

that follow.[51]  Momentus claims that the Trust simply failed to ever return the Letter of

Transmittal despite Momentus having provided the information the Trust required.[52]  Plaintiff

contends that Momentus provided only "cursory responses" to its questions, including

"insufficient information to determine the validity of the share calculations . . . ",  supplied an

inadequate capitalization table, and did not "follow up" with the Trust on questions the Trust had

posed regarding "large stock option grants to Momentus insiders" including Mr. Kokorich.[53]

### E.   THE SEC ORDER[54]

On July 13, 2021, the SEC issued an order instituting a cease-and-desist proceeding

against Momentus (the "SEC Order").[55]  The SEC Order asserts that Momentus and Mr.

---

[48] MSJ at 8-9 (emphasis removed to reflect original) (referencing Letter of Transmittal, Ex. A to Decl. of Matthew Wolf (Ex. A-G to D.I. No. 46)).
[49] *Id*. at 9.
[50] MSJ at 10 (referencing the First Email Chain).
[51] *See id*. at 10-14 for Momentus's summary of the emails; *and see* Opp'n to MSJ at 10-17 for the Trust's summary.
[52] MSJ at 14.
[53] Opp'n to MSJ at 11, 14-15.
[54] This information is relevant to the instant Motion only insofar as the Trust references the SEC Order in its prevention doctrine argument (see below).
[55] *See* Am. Compl*.,* Ex. D.

Kokorich engaged in conduct constituting "materially false statements, omissions, and other deceptive conduct."[56] The SEC Order further states Momentus and Mr. Kokorich "misled" investors "in two key respects."[57]

First, the SEC Order notes that Momentus "claimed that in 2019, Momentus had 'successfully tested' in space its key technology.[58] However, the SEC found the "2019 test failed to meet Momentus' own public and internal pre-launch criteria for success, and was conducted on a prototype that was not designed to generate commercially significant amounts of thrust."[59] Second, the SEC Order provides that Mr. Kokorich and Momentus "concealed and made false statements about U.S. government concerns with national security and foreign ownership risks posed by [Mr.] Kokorich, including concerns related to his affiliation with Momentus."[60] The SEC Order found "investors lacked material information about the extent to which [Mr.] Kokorich's affiliation with Momentus jeopardized . . . the company's launch schedule and the revenue projections that were based in part on assumptions about the timing of its first commercial launch."[61]

## III.    PARTIES' CONTENTIONS

### A.  MOMENTUS

Momentus moves for partial summary judgment on the breach of contract claim. Momentus contends that the Trust "failed to satisfy an unambiguous condition to receiving the merger consideration that [it] seeks under the merger agreement."[62] Momentus maintains that, as

---

[56] *Id.*, Ex. D ¶ 1.
[57] *Id.* ¶ 4.
[58] *Id.*
[59] *Id.*
[60] *Id.,* Ex. D ¶ 5.
[61] *Id.*
[62] Reply Br. in Supp. of Def. Momentus Inc.'s Mot. for Partial Summ. J. (hereinafter "Reply MSJ") at 1 (D.I. No. 48).

such, Plaintiff cannot establish an essential element of the breach of contract claim.[63]  Momentus contends that "Parties cannot maintain claims for breach of contract unless all relevant conditions precedent have been satisfied or excused."[64]

Momentus disputes Plaintiff's claim that relying on the Merger Agreement (to which the Trust is not a party) to supply a binding condition on the Trust's right to receive merger consideration would effectively "have the Trust forfeit the value of its . . . $4 million investment."[65]  Rather, Momentus states that the Trust's "only entitlement to shares . . . is through execution of the Letter of Transmittal.  Thus, Plaintiff cannot be said to have forfeited rights that he did not have in the initial instance."[66]

Finally, Momentus argues that the prevention doctrine should not apply here because Momentus did not: (i) withhold the letter of transmittal; (ii) delay informing the Trust of the number of shares to which it was entitled; or (iii) "materially contribute" to the Trust's failure to satisfy the condition precedent.[67]

## B.  PLAINTIFF

Plaintiff contends that Momentus is not entitled to partial summary judgment on its breach of contract claim because material factual disputes exist with respect to: (i) whether the Merger constituted an "Equity Financing" or "Liquidity Event" under the SAFE Agreements; (ii) whether the SAFEs required the Trust to execute a Letter of Transmittal as a condition precedent

---

[63] MSJ at 28 (quoting *Finclusive Capital v. Q2 Software*, 2021 WL 5225860, at *8 (Del. Super. Oct. 28, 2021) ("In a contract with a condition precedent, performance of that condition precedent is an essential element of a plaintiff's breach of contract case.").

[64] *Id*. at 17.

[65] Opp'n to MTD at 18.

[66] Reply MSJ at 18 (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456) (Waiver of a contractual right presupposes the existence of a "known right.") (citing 28 AM. JUR. 2D, *Estoppel and Waiver*, § 158 (1966); *George v. Frank A. Robino, Inc*., 334 A.2d 223, 224 (Del. 1975)).

[67] *Id*. at 25-28.

to receiving merger consideration; and (iii) whether Momentus fairly and properly calculated the number of shares it proposed to distribute to the Trust.[68]

Plaintiff also argues that a forfeiture would result if its breach of contract claim was dismissed and it was held to a condition precedent supplied by the Merger Agreement, an instrument to which the Trust is not a party.[69]

Finally, Plaintiff asserts that, even if the Court were to construe the delivery of the Letter of Transmittal as a condition precedent, Momentus' "obstructive conduct" prevented the Trust from fulfilling that condition, thereby excusing the Trust's inaction under the prevention doctrine.[70]

## IV. STANDARD OF REVIEW

"The Court will grant summary judgment if, after viewing the record in a light most favorable to the non-moving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law."[71] On a motion for summary judgment, the Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[72] The moving party bears the initial burden of showing the motion is supported by the undisputed facts.[73] If the moving party carries its burden, then the burden shifts to the non-moving party to show a genuine issue of material fact exists, and that a trial is necessary.[74]

---

[68] Opp'n to MSJ at 3-4.
[69] Opp'n to MTD at 18.
[70] Opp'n to MSJ at 3.
[71] *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Nov. 23, 2021) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)); Del. Super. Ct. Civ. R. 56.
[72] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977); *Merrill*, 606 A.2d at 99; *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962)).
[73] *Id.* (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[74] *Id.* (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

Although summary judgment is "encouraged when possible,"[75] there is no "right" to summary judgment.[76] "The Court may deny summary judgment if the Court is not reasonably certain" whether there is a triable fact issue.[77] The Court may also deny summary judgment if "the Court concludes a more thorough inquiry into, or development of, the facts[] would clarify the law or its application."[78]

## V. DISCUSSION

To state a claim for breach of contract, the plaintiff must show: "(1) a contractual obligation; (2) breach of that obligation; and (3) damages caused by the defendant's breach."[79]

"When a contract is clear and unambiguous, the court will give effect to the plain-meaning of the contract's terms and provisions."[80] Although "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction",[81] an ambiguity does exist "when the provisions in controversy are reasonably or fairly susceptible to different reasonable interpretations."[82] The Supreme Court has held that summary judgment is inappropriate where contractual language is ambiguous.[83]

Fundamentally, the Parties here disagree about the contractual obligation at issue and the source of that obligation. Consequently, the Parties also dispute whether that obligation has been breached. That disagreement is only sufficient to preclude summary judgment if (i) Momentus' interpretation is supported by undisputed facts; and (ii) if so, that Plaintiff has failed to argue a

---

[75] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005).
[76] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (internal citation omitted).
[77] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969)).
[78] *Id.* (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918-19 (Del. 1965)).
[79] *1 Oak Priv. Equity Venture Cap. Ltd. v. Twitter, Inc.*, 2015 WL 7776758, at *4 (Del. Super. Nov. 20, 2015).
[80] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010).
[81] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (internal citations omitted).
[82] *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1062 (Del. 2010), *as corrected* (May 10, 2010) (internal citation omitted).
[83] *See GMG Cap. Invs., LLC,* 36 A.3d at 784.

12

different, reasonable interpretation. Here, Momentus has not presented undisputed facts in support of its interpretation. This is enough to defeat the SJ Motion. Yet even if Momentus could present undisputed facts, Plaintiff has—at this stage of the proceedings—nevertheless argued reasonable alternative interpretations of the contracts, obligations, and breaches at issue.

## A. THERE ARE MATERIAL DISPUTES ABOUT THE EFFECT OF THE MERGER ON THE SAFE AGREEMENTS, AND WHETHER THE TRUST IS SUBJECT TO THE MERGER AGREEMENT.

Momentus argues that the Merger was neither an Equity Financing nor a Liquidity Event as defined in the SAFE Agreements, and so Momentus is therefore not required to "automatically issue" shares (in the event of the SAFEs Section 1(a)'s Equity Financing) nor acknowledge that the Trust is "automatically . . . entitled to receive" compensation (under the SAFEs Section 1(b)'s Liquidity Event).

Momentus primarily focuses on the terms of the Merger Agreement, not the SAFE Agreements, though Momentus does acknowledge that the SAFE Agreements provide for certain "triggering events," including an Equity Financing.[84] Momentus highlights that the SAFEs also state that "[t]he [Trust] will execute and deliver to [Momentus] all transaction documents related to the 'Equity Financing' . . . ."[85]

However, Momentus simultaneously denies that the Merger constituted an Equity Financing.[86] Instead, Momentus contends that the Merger Agreement treated the SAFEs "similarly to the other holders of Company Interests" in that "all outstanding shares of 'Company

---

[84] MSJ at 3 (citing § 1 of both the February SAFE and the August SAFE).
[85] *Id*. at 4 (citing § 1 of both the February SAFE and the August SAFE).
[86] *See id*. at 18, n.5 (citing § 2 of each SAFE) ("Though Plaintiff implicitly contends the SAFEs were triggered, here the Merger was not an 'Equity Financing' because Momentus did not 'issue[] and sell[] Preferred Stock' in the Merger. Instead, in the Merger, Momentus cancelled all of its preferred stock;" *see also* MSJ at 23, n. 6 ("[T]he Merger was not a triggering 'Equity Financing' under the SAFEs that entitled the Trust to receive shares of Momentus common stock.").

13

Stock' were cancelled and converted into the 'right to receive' the 'Per Share Company Stock Consideration'" upon closing."[87]

Conversely, Plaintiff concentrates his breach of contract claim on the SAFE Agreements' terms, and argues that the Merger was either an Equity Financing or a Liquidity Event as defined in those Agreements.[88] Plaintiff maintains that Momentus was therefore obligated to deliver shares to the Trust under either scenario.[89] Plaintiff claims that Momentus breached the SAFE Agreements by not doing so, and the Trust was damaged when the value of those shares then "dropped precipitously".[90]

Plaintiff contends that summary judgment is inappropriate because a factual dispute exists as to whether the Merger constituted an Equity Financing or a Liquidity Event, or neither, and what effect that has on Momentus' obligation to pay merger consideration to the Trust.[91] Plaintiff argues that "[d]iscovery into a number of issues solely within Momentus' control is necessary, including information concerning (i) the nature of the merger transaction, and (ii) whether the shares Momentus proposed to provide to the Trust were properly and fairly calculated."[92]

---

[87] *Id*. at 5-6 (citing Merger Agreement §§ 2.6(a), (f)) (describing the "Per Share Company Stock Consideration" as a certain number of shares of common stock in the surviving company.").

[88] Am. Compl. ¶ 51. *See also* Opp'n to MSJ at 6-7:
> [U]pon the occurrence of an Equity Financing, as defined, the Trust would become automatically entitled to "a number of shares of Safe Preferred Stock," determined by a formula set forth in the SAFE. Upon the occurrence of a Liquidity Event, defined as a Change in Control or an Initial Public Offering, the Trust would "automatically be entitled to receive" its *pro rata* share of merger consideration, whether in the form of cash (the "Cash-Out Amount") or as-converted Momentus shares (the "Conversion Amount").

[89] *Id*.

[90] Opp'n to MSJ at 1. The Trust claims that Momentus' delay in informing the Trust of the number of shares to which it was entitled "significantly damaged" the Trust as the per-share price fell from $10.56 to $2.91, resulting in the value of the Trust's 724,995 shares declining from $7,655,947 "when the shares should have been distributed" to $2,109,735, "well below the $4 million investment amount." Am. Compl. ¶¶ 5, 59.

[91] *Id*. at 3.

[92] *Id*. at 4.

The Court does not believe summary judgment, currently, is appropriate. "[S]ummary judgment cannot be granted where a material factual dispute arises regarding contracting parties' intentions"[93] and, to the Court, there appears to be the existence of valid disputes about intention regarding both the terms of the Merger and the effect of the Merger on the parties' rights and obligations under the SAFEs. Given the pre-discovery stage of the case, the Court does not believe the issues are yet ripe for resolution on summary judgment.

### B. THERE IS A MATERIAL DISPUTE ABOUT THE EXISTENCE OF A CONDITION PRECEDENT, AND, IF SO, WHETHER IMPOSING THAT CONDITION WOULD RESULT IN A FORFEITURE.

Momentus asserts that Merger Agreement section 2.8(d) dictates that Momentus is not obligated to deliver on the Trust's "right to receive" merger consideration until a Letter of Transmittal has been received by its Exchange Agent.[94] In support, Momentus relies upon the following language: (i) "Upon receipt by the Exchange Agent of the completed Letter of Transmittal and Surrender Documentation, the Exchange Agent will deliver to the holder of such Company Interests the portion of the Aggregate Stock Consideration payable to such holder. . . .;" and (ii) "…*Until a Letter of Transmittal* has been received by the Exchange Agent, each Company Interest shall represent . . . only the right to receive" merger consideration.[95]

Momentus contends that "[u]nder Delaware law, '[t]here are no particular words that must be used in order to create a condition precedent . . . any phrase that conditions performance' suffices.'"[96] Momentus argues the language it cites from the Merger Agreement "'conditions

---

[93] *McAnulla Electrical Construction, Inc. v. Radius Techs., LLC*, 2010 WL 3792129, at *5 (Del. Super. Sept. 24, 2010) (citing *Modern Telecomms., Inc. v. Modern Talking Picture Serv.*, 1987 WL 11286, at *3 (Del. Ch. May 27, 1987)).

[94] *Id.* at 8.

[95] *Id.* (emphasis supplied). Momentus further argues that other provisions in the Merger Agreement "reiterated and implemented" the return of the Letter of Transmittal as a condition precedent, e.g., Section 1.2(c) (""[T]he Letter of Transmittal *that shall be required to be delivered by the applicable holders of Company Interests as a condition to receipt of any portion of the Aggregate Stock Consideration* shall include . . . .") (Opp'n to MSJ at 7) (emphasis supplied).

[96] *Id.* at 19, quoting *Thomas v. Headlands Tech Principal Holdings, L.P.*, 2020 WL 5946962, at *5 (Del Super. Sept. 22, 2022).

performance' on the return of Letter of Transmittal" and therefore creates the condition precedent.[97]

Plaintiff, again, focuses his argument on the terms of the SAFE Agreements, contending that that "[n]owhere do the SAFE Agreements contain the language required for a condition precedent,"[98] and that "[t]his is enough to defeat Momentus' condition precedent argument."[99] Further, Plaintiff claims that contracting parties are required to "use unambiguous, express language to create a condition precedent capable of producing a forfeiture"[100] because Delaware law disfavors conditions precedent "because of their tendency to work a forfeiture."[101]

Like Momentus, Plaintiff relies on the Court's opinion in *Thomas v. Headlands Tech Principal Holdings*[102] to support his argument. *Thomas*, in relevant part, reads as follows:

> The existence of conditions precedent "are ultimately a question of contract interpretation."[103] "[I]f the language of a contract is plain and unambiguous, a court should construe the contract according to its terms."[104] "There are no particular words that must be used in order to create a condition precedent. . . any phrase that conditions performance" suffices.[105] A condition precedent is an "act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises."[106] Under Delaware law, "[c]onditions precedent are

---

[97] *Id.* at 19. Momentus also argues that "treatment of the Letter of Transmittal as a condition is unsurprising as Momentus could not issue shares as merger consideration without first receiving the Letter of Transmittal and Form W-9." (Reply MSJ at 5 (referencing *Posco Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 753 (S.D.N.Y. 2021)) ("explaining that courts have construed triggering events as conditions if the trigger is necessary to a party's ability to perform the obligation at issue . . . ." (internal citations omitted)).

[98] Opp'n to MTD at 18.

[99] Opp'n to MSJ at 19 (citing *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *28 (Del. Super. July 29, 2021) (denying judgment on the pleadings where the Court found no conditions precedent in the applicable contract provision); (and *Grottenthaler v. SVN Med, LLC*, 2022 WL 17249642, at *4 (Del. Super. Nov. 28, 2022) ("If a completed I-9 is a condition precedent to receiving wages as a matter of law, no party has pointed the Court to that condition in the contract or in federal law;" denying motion to dismiss).

[100] *Id.* (citing *Thomas* at *5).

[101] *Id.* (quoting *Stoltz Realty Co. v. Paul*, 1995 WL 654152, at *7 (Del. Super. Sept. 20, 1995)).

[102] 2020 WL 5946962 (Del. Super. 2020).

[103] Quoting *Casey Emp't Servs., Inc. v. Dali*, 1993 WL 478088, at *4 (Del. Nov. 18, 1993).

[104] Quoting *AES Puerto Rico, L.P. v. Alstom Power, Inc.*, 429 F. Supp. 2d 713, 717 (D. Del. 2006) (citing 17A Am. Jur. 2d *Contracts* § 471 (1991)).

[105] Quoting *Cato Cap. LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 619 (D. Del. 2014) (interpreting Delaware law).

[106] Quoting *Condition Precedent*, BLACK'S LAW DICTIONARY (10th ed. 2014); see also RESTATEMENT (SECOND) OF CONTRACTS § 224 ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.").

not favored in contract interpretation because of their tendency to work a forfeiture."[107] Parties to a contract must use unambiguous, express language to create a condition precedent capable of producing a forfeiture.[108]

Momentus emphasizes that "no particular words" are necessary if a "phrase that conditions performance" is included. Plaintiff accentuates the need for "unambiguous, express language" when the condition precedent is "capable of producing a forfeiture." Taken together, the degree of precision required therefore turns on whether the "condition" at issue can produce a forfeiture. If not, only a phrase conditioning performance is necessary. If so, Delaware law requires it to be made unambiguously and expressly.

The condition precedent proposed by Momentus seems capable of working a forfeiture. As the Court noted during the hearing on Momentus' Motion to Dismiss:

> I'm concerned of a forfeiture, you invest $4 million, that's a pretty big investment in this entity, and it shouldn't be a forfeiture, the parties should be working together to make sure that both parties benefit from this. It's not any game, it's not a, you know, gotcha thing, it's supposed to be people are working together, they invested $4 million and you take care of them when there's a time for it.[109]

Because of the threat of forfeiture, the "unambiguous, express language" standard should apply to the evaluation of whether there is a condition precedent under these circumstances.

Plaintiff has presented a reasonable argument that the SAFE Agreements do not contain the requisite express, unambiguous language. Plaintiff has also presented a reasonable argument that the Trust is not bound by the terms of the Merger Agreement, in which Momentus claims to locate the condition precedent. Therefore, material issues of fact exist with respect to the

---

[107] Quoting *Stoltz Realty Co.,* 1995 WL 654152, at *9 (quoting 17A AM. JUR. 2D *Contracts* § 471).

[108] Referencing *QC Holdings, Inc. v. Allconnect, Inc*., 2018 WL 4091721, at *7 (Del. Ch. Aug. 28, 2018) ("For a condition to effect a forfeiture, it must be unambiguous. If the language does not clearly provide for a forfeiture, then a court will construe the agreement to avoid causing one."); also referencing *Martin v. Hopkins*, 2006 WL 1915555, at *6 (Del. Super. June 27, 2006) (same); *Volair Contractors, Inc. v. Coastal Mech., Inc*., 1986 WL 13982, at *1 (Del. Super. Dec. 1, 1986) (requiring "an unambiguous expression of intent to make receipt of payment" from a third party a condition precedent).

[109] Tr. at 27.

existence of a condition precedent, and the potential for forfeiture implied by that condition precedent.

### C. THERE IS A MATERIAL DISPUTE ABOUT THE APPLICATION OF THE PREVENTION DOCTRINE.

The Court, finally, finds that a genuine dispute remains about whether Plaintiff (for the Trust) could invoke the prevention doctrine to excuse his nonperformance. This would be true even if the Court were to find that Momentus had presented undisputed facts establishing that the Trust was subject to an unfulfilled condition precedent under the Merger Agreement. This is largely because the application of the doctrine is dependent on whether the conduct in question materially contributed to nonperformance.[110]

Whether Momentus' conduct contributed materially to the Trust's decision not to return the Letter of Transmittal is a fact-intensive inquiry not appropriate for summary judgment at this stage. As this Court has stated, "Delaware courts routinely recognize that materiality is a question of fact that is ordinarily not suited for judgment as a matter of law."[111]

Momentus notes that the record before the Court now includes evidence that the Trust received the Letter of Transmittal in September 2021 and not August 2022 (as the Trust had previously contended), and that this aligns with the Court's "recogni[tion] at the motion to dismiss hearing that Momentus's arguments would be stronger if it could show that it sent a letter in September 2021 rather than in April 2022. Momentus has now made that showing[.]"[112]

---

[110] MSJ at 26-27. ("[A] breach is generally considered to have '"contributed materially" to the non-occurrence of a condition if the conduct made satisfaction of the condition less likely,' a failure of performance did not contribute materially 'if it can be shown that the condition would not have occurred regardless . . . .'") (quoting *In re Anthem-Cigna Merger Litig.*, 2020 WL 5106556, at *90 (Del. Ch. Aug. 31, 2020)).

[111] *IP Network Solutions, Inc. v. Nutanix, Inc.*, 2022 WL 369951, at *11 (Del. Super. Feb. 8, 2022).

[112] MSJ at 25-26. (At the hearing, the Court stated: "The Court is very concerned about the timing of this transaction. And I'm very concerned that if I dismissed it on a motion to dismiss for a condition precedent, there would be a forfeiture. . . . As pled, Plaintiff has pled a breach of contract. Whether discovery demonstrates a material conditions precedent have occurred that would prevent the issuance of the stock to the Larian Trust, that would be grounds for summary judgment and not on a motion to dismiss.") (Tr. at 67, 68-69).

18

Plaintiff concedes that the Trust no longer claims it did not received the initial Letter of Transmittal, but counters that ending a prevention doctrine inquiry on this fact alone "ignores the parties' subsequent communications" during which the Trust's counsel "unsuccessfully sought to obtain information" from Momentus.[113] Plaintiff claims that the Trust's counsel "did not want to have his client sign the Letter of Transmittal, containing a broad release of Momentus, without understanding the answers to his questions."[114]

Momentus argues any deficiency in its provision of information to the Trust was immaterial to the Trust's failure to return the Letter of Transmittal.[115] Momentus notes that "there is no indication the Trust would have returned the Letter of Transmittal and Form W-9 if Momentus had done anything differently—as shown by Plaintiff's continuing failure" to do so even after the Trust's questions were answered.[116]

Plaintiff counters by arguing that the Merger "came on the heels of the SEC's Cease and Desist Order against Momentus and Mr. Korkorich, finding that they had materially misled investors. The SEC Order understandably led the Trust . . . to proceed cautiously and seek information" about how the Merger would affect its investment.[117] Moreover, Plaintiff asserts that "Momentus' post-merger conduct only heightened the Trust's concerns" and "raised more questions than [it] answered."[118]

Whether Momentus' conduct materially contributed to the Trust's failure to return the Letter of Transmittal is a fact-intensive inquiry that cannot be resolved on the present record.

---

[113] Opp'n to MSJ at 25-26.
[114] *Id.*
[115] MSJ at 27.
[116] *Id.*
[117] Opp'n to MSJ at 26.
[118] *Id.*

19

Therefore, whether the prevention doctrine might excuse the Trust from performance presents material issues of fact that are not appropriately decided at this stage of the proceeding.

## VI.     CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

January 31, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress